UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK GEOGHEGAN and                                    **DECISION AND ORDER**
HEATHER GEOGHEGAN,

                                    Plaintiffs,         17-CV-00008-JJM

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

                                    Defendant.

_____

Plaintiffs in this diversity action seek to recover supplemental underinsured

motorist ("SUM") benefits from their insurance carrier, defendant Progressive Casualty

Insurance Company, relating to an August 12, 2013 automobile accident. Complaint [1-1].[1]

Plaintiffs allege that Progressive breached its insurance policy with plaintiffs by failing to make

"full and timely payment" of SUM benefits. Id., ¶¶30-31, 39-40. Familiarity with the relevant

procedural history is presumed.

Before the court is plaintiffs' motion seeking to compel Progressive to amend its

affirmative defenses and to produce its entire claims file, including information as to reserves, as

well as for an award of attorney's fees [25]. The motion was orally argued on December 14,

2017 [30].  Having reviewed the parties' submissions [25-27, 29, 32-34], for the following

reasons the motion is granted in part and denied in part.

---

[1]        Bracketed references are to CM/ECF docket entries.

**DISCUSSION**

**A.      Amendment of Affirmative Defenses**

Plaintiffs seek to compel Progressive to again amend  its unnumbered affirmative defenses [18] relative to collateral source payments, culpable conduct, failure to use or misuse of seatbelts, and failure to mitigate damages. At oral argument Progressive withdrew its culpable conduct and seatbelt defenses, and acknowledged that it presently is unaware of any facts supporting its collateral source and failure to mitigate defenses, reserving its right to later move for supplementation or amendment of these defenses should it learn of such facts. Should such leave be granted, it will be conditioned on plaintiffs' right to obtain further discovery as to those defenses. On that basis, this portion of plaintiffs' motion is denied as moot.

**B.      Production of Claims File**

Plaintiffs move for production of Progressive's entire claims file, including information as to the reserves it has established for plaintiffs' SUM claim, up to the date of commencement of this action. Gelber Affirmation [25-1], ¶40. "Reserves . . . are funds set apart as a liability in the accounts of a company to provide for the payment or reinsurance of specific contingent liabilities." Maryland Casualty Co. v. United States, 251 U.S. 342, 352 (1920).

While Progressive argues that there is no basis to "compel[ ] production of such proprietary information which is absolutely vital to an insurance company's internal operations" (Progressive's Memorandum of Law [27], p. 7 of 17), it does not invoke privilege as the reason for its refusal to provide this information: "this is not a question of privilege or some other discovery exemption  . . . . Progressive's defense is not premised upon the application of privilege, but rather that the information sought by plaintiffs is 'palpably irrelevant' [to their

claims]. As such, it is beyond the scope of permissible discovery commenced by Rule 26". Id., pp. 5, 15 of 17. Therefore, notwithstanding the parties' citation to several cases addressing whether this information is privileged, I will analyze plaintiffs' request only in terms of relevance, not privilege.

Progressive's policy requires it to pay its insureds [plaintiffs] "all sums that the insured . . . shall be legally entitled to recover as damages from the owner or operator of an [underinsured] motor vehicle because of bodily injury sustained by the insured, caused by an accident arising out of such [underinsured] motor vehicle's ownership, maintenance or use". Progressive's Supplemental Memorandum of Law [34], pp. 3-4. Progressive argues that "[t]he duty and obligation for assessing damages rests solely within the trier of fact. Thus, [Progressive's] thoughts as to value, exposure and what [it] set for Reserves has absolutely ZERO relevance to the trier of fact's assessment of damages . . . . [I]t is for the trier of fact to determine independently." Progressive's Memorandum of Law [27], pp. 13-14 of 17.

If Progressive were defending plaintiffs against a claim by a third party, I would agree that its reserves (that is, its assessment of the potential value of the third party's claim) would be irrelevant to the determination of that value, which would be the sole province of the trier of fact. However, there is a "difference in the role of an insurance company in a first party claim as opposed to a third party claim . . . . When a first party claim between an insured and his/her insurer is at issue, the insured is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes the insured a duty to adjust his claim in good faith." Tayler v. Travelers Insurance Co., 183 F.R.D. 67, 71 (N.D.N.Y. 1998).

"[T]he duties of good faith and fair dealing . . . encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002). In the context of a claim for insurance benefits, the insured could reasonably expect not merely the eventual payment of policy benefits, but *prompt* payment of those benefits when due. "An insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for . . . prompt payment of the policy proceeds upon submission of a valid claim". Bi-Economy Market, Inc. v. Harleysville Insurance Co. of New York, 10 N.Y.3d 187, 194 (2008).

This implied obligation is corroborated by N.Y. Insurance Law §2601(4) and (5), prohibiting insurers from "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear", and from "compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them". These provisions "are properly viewed as measures regulating the insurer's performance of its contractual obligations, as an adjunct to the contract". New York University v. Continental Insurance Co., 87 N.Y.2d 308, 317 (1995). Thus, although §2601 "does not give rise to a private cause of action" (id. at 317-18), it may "amplify a cause of action for breach of contract". Bristol Harbour Associates, L.P. v. Home Insurance Co., 244 A.D.2d 885, 885 (4th Dept. 1997).

While Progressive "note[s] that plaintiffs have acknowledged there is no basis for a bad faith claim in this case" (Progressive's Supplemental Memorandum of Law [34], p. 8), that is because there is no such cause of action. *See* Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 81 (1st Dept. 2001) ("[w]e are unwilling to adopt the widely-accepted tort cause of action

for 'bad faith' in the context of a first-party claim, because we recognize that to do so would constitute an extreme change in the law of this State").

Progressive further argues that plaintiffs "failed to reference any claim of the violation of the duty of good faith and fair dealing in their Complaint . . . . Indeed, plaintiffs present a fairly basic and straight forward claim for breach of contract." However, there is no need to do so, since "the alleged failure to comply with the covenant of good faith and fair dealing is necessarily encompassed within the breach of contract claim". Violet Realty, Inc. v. Affiliated FM Insurance Co., ___F. Supp.3d___, 2017 WL 3704835, *3 (W.D.N.Y. 2017). To that end, plaintiffs allege that Progressive has failed to "make full and *timely* payment of the underinsured policy benefits". Complaint [1-1], ¶¶30, 39 (emphasis added).

If plaintiffs are correct,[2] then their damages will be not only the underinsured benefits owing under their policy, but also prejudgment interest from the date that the benefits should have been paid. *See* N.Y.C.P.L.R. §5001(a), (b) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . . Interest shall be computed from the earliest ascertainable date the cause of action existed"). "[S]tatutory prejudgment interest is the type of damages measure which the law itself implies or presumes to have accrued from the wrong complained." Siemens Westinghouse Power Corp. v. Dick Corp., 320 F. Supp. 2d 120, 122 (S.D.N.Y. 2004) (distinguishing prejudgment interest from consequential damages). It "is in essence a part of the substantive claim itself". Siegel, N.Y.C.P.L.R. Practice Commentaries C5001:2 (McKinney). "[I]n a diversity case, state law governs the award of prejudgment interest." Adrian v. Town of Yorktown, 620 F.3d 104, 107 (2d Cir. 2010). Thus, in AGCS

---

[2]    Progressive argues that because "plaintiffs have not established all elements of their claim, it follows that Progressive is under no obligation to extend payment and/or settlement". Progressive's Supplemental Memorandum of Law [34], p. 5. However, Progressive has not alleged that the Complaint fails to state a cause of action.

Marine Ins. Co. v. World Fuel Services, Inc., 220 F. Supp. 3d 431, 442-43 (S.D.N.Y. 2016), the court awarded prejudgment interest at the New York statutory rate from the date that payment of insurance policy proceeds was due.

"[T]he discoverability of reserve information is, and should be, determined on an ad hoc basis in light of the precise issues in the case, the likelihood that reserve information would be relevant to those issues." 17A Couch on Insurance §251:29. "The scope of discovery of insurance information should therefore be broader in a first-party claim between an insured party and his insurer than in a third-party personal injury claim. Consequently, courts have been more likely to find reserves and settlement authority discoverable in claims between an insured and his or her insurer." Silva v. Basin Western, Inc., 47 P.3d 1184, 1192 (Sup.Ct. Colo. 2002).

Although Progressive suggests that "a jury would never even be permitted to hear [its] thoughts on valuation of damages" (Progressive's Memorandum of Law [27], pp. 13-14 of 17), that is a question for another day - and in any event, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable". Fed. R. Civ. P. ("Rule") 26(b)(1). Since I conclude that information as to the reserves established by Progressive are sufficiently related to plaintiffs' claims that Progressive failed to make timely payment of SUM benefits, that information (up to the date of commencement of this action) should be produced to plaintiffs.

Plaintiffs also contend that they have not been provided with other portions of the claims file, pointing to various types of information which should have been in the file which was produced. Progressive responds that "it has produced, without redacting or withholding any documents, the entirety of its claims file (exclusive of the claim notes)", and that it "is not maintaining any objection to, or withholding, any documents which would be responsive to

[plaintiffs'] requests. Should counsel wish to probe further what happened to documents which

he believes existed, he might surely inquire during depositions. However, to the extent that

counsel has asked for something, and Progressive maintains it does not possess it, we would

submit that no issue is in dispute among and between the parties". Progressive's Memorandum

of Law [27], pp. 3-4 of 17.

"The court is entitled to rely on the representations of  counsel, as officers of the

court." United States v. Johns, 336 F. Supp.2d 411, 424 (M.D.Pa. 2004). Therefore, I will not

order Progressive to produce documents which it claims not to possess. However, should

plaintiffs subsequently learn that the entire claims file was not produced, they may seek

additional relief from the court.


## C.      Attorney's Fees

Where a motion to compel is granted, attorney's fees must be awarded to the

moving party unless "the opposing party's nondisclosure, response, or objection was

substantially justified; or other circumstances make an award of expenses unjust". Rule

37(5)(A)(ii), (iii). "[C]onduct is substantially justified if there was a genuine dispute or if

reasonable people could differ as to the appropriateness of the contested action." Underdog

Trucking, L.L.C. v. Verizon Services Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011).

As discussed, the principal disputed issue on this motion was the relevance of

Progressive's reserve information. While Progressive did not prevail, in my view its position was

not so tenuous as to mandate an award of fees. "A responding party's refusal to produce

documents on the basis that they are irrelevant can provide substantial justification unless such a

position involves an unreasonable, frivolous or completely unsupportable reading of the law . . . .

-8-

Though Defendant's relevancy argument has proved unavailing, it was not without substance.

Accordingly Plaintiff's motion for costs and fees is denied." Klein v. Torrey Point Grp., LLC,

979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013).


## CONCLUSION

As set forth herein, plaintiffs' motion to compel [25] is granted in part and denied

in part.

Dated:   January 5, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge